JULIUS C. SHARP ET AL., APPELLEES, v. CITY OF SOUTH OMAHA ET AL., APPELLANTS.

FILED FEBRUARY 2, 1898.   No. 9660.

1. **Municipal Corporations: GAS COMPANIES: FRANCHISES.** It is within the power of cities of the first class having less than 25,000 inhabitants to grant the right to a gas company to lay and maintain its pipes and mains under the streets and other highways of the city for the purpose of supplying its inhabitants with gas, and to regulate the charge therefor.

2. ———: ———: ———. The authority to grant such a franchise is not restricted to persons or companies authorized to erect works within the city for the manufacture of gas, nor need such franchise be limited to the period of five years.

3. ———: ———: ———. Subdivision 15 of section 68 of chapter 13a, article 2, Compiled Statutes, is not a restriction upon subdivision 16, but a concurrent provision relating to another subject, the former to laying mains on the streets, the latter to lighting the streets.

APPEAL from the district court of Douglas county. Heard below before SCOTT, J.   Reversed.

*George E. Pritchett*, for appellants.

*J. M. Woolworth* and *Congdon & Parish*, contra.

IRVINE, C.

The council of the city of South Omaha passed, and the mayor approved, an ordinance purporting to grant to the South Omaha Gas Light Company, its successors and

assigns, authority, for a period of twenty-five years, to
sell and supply gas within the city, and to lay and main-
tain pipes and mains under the surface of the streets,
alleys, and other public highways of the city.   In pur-
suance of provisions in the ordinance the South Omaha
Gas Light Company assigned its rights, through an inter-
mediate grantee, to the Omaha Gas Company.   The
Omaha Gas Company was proceeding to lay its mains in
the streets of South Omaha when this suit was begun by
three taxpayers of South Omaha, who alleged in their
petition the foregoing facts and asserted that the ordi-
nance was void.   The prayer was for an injunction re-
straining the gas companies from laying their pipes and
the defendants, the city and the two gas companies, from
performing any acts in pursuance of the ordinance.   The
city did not appear in the action, and its default was en-
tered.   The two gas companies answered, denying many
of the averments of the petition.   A decree was rendered
reciting that the cause was "submitted to the court upon
the petition of the plaintiffs Julius C. Sharp, Harry Sharp,
and Louis Schroeder, and the answer and demurrer of the
defendants the South Omaha Gas Light Company and
the Omaha Gas Company, without evidence, and was
argued by counsel, on consideration whereof the court
finds upon the issues joined between the plaintiffs   *   *
and defendants   *   *   *   in favor of the plaintiffs," and
granting a perpetual injunction as prayed.   This finding
is not so unwarranted as would appear at first blush, be-
cause the averments of the petition were largely conclu-
sions of law, and most of the denials in the answer were
denials of those conclusions.   Where issues of fact were
joined their materiality is doubtful.   The real question
is the power of the mayor and council to enact such an
ordinance, its passage, approval, and terms being ad-
mitted.

The charter provisions invoked on either side as bear-
ing on the question, are the following, from article 2,
chapter 13a, Compiled Statutes:

Sec. 35. "The mayor and council shall have the care, supervision, and control of all public highways, bridges, streets, alleys, public squares, and commons within the city, and shall cause the same to be kept open and in repair and free from nuisances."

Sec. 68, sub. 15. "To make contracts with and authorize any persons, company, or association to erect gas works, electric or other light works in said city, and give such persons, company, or association the privilege of furnishing lights for the streets, lanes, and alleys of said city for any length of time not exceeding five years; to purchase or provide for, establish, construct, maintain, operate, and regulate, for the city, any such gas works, electric or other light works; or to condemn and appropriate for the use of the city, gas works, electric or other light works and plants in a manner and form as provided in subdivision nineteen of this section; and to levy a tax not exceeding five mills on the dollar in any one year for the purpose of paying the cost of lighting the streets, lanes, and alleys of said city, or for the purpose of buying or establishing, extending, and maintaining such gas works, electric or other light works; and where the amount of money which would be raised by the tax levy provided for in this section would be insufficient to establish or pay for a system of gas, electric, or other light works, to borrow money and pledge the property and credit of the city upon its negotiable bonds or otherwise to an amount not exceeding fifty thousand dollars for the purpose of establishing or paying for, maintaining, and operating such gas, electric, or other light works, authority therefor having first been obtained by a majority vote of the people at an election upon a proposition submitted in a manner provided by law for the submission of propositions to aid in construction of railroads and other works of internal improvement; and when any such bond shall have been issued by the city, to levy annually upon all the taxable property of the city such tax as may be necessary (not exceeding one mill for twenty thousand

dollars of bonds so issued) for a sinking fund for the paying of the accruing interest on such bonds and the principal thereof at maturity; to provide for the office of light commissioner, and to prescribe the duties and power of such office; *Provided,* That in cities having a water commissioner, such water commissioner shall be ex officio light commissioner."

Sec. 68, sub. 16. "To provide for the lighting of streets, laying down of gas pipes, and erection of lamp posts, and to regulate the sale and use of gas and electric or other lights and the charge therefor, and rent of gas meters within the city, and to require the removal from the streets, avenues, and alleys, and the placing under ground of all telegraph, electric, and telephone wires."

The ordinance attacked provides in its first section that the South Omaha Gas Light Company, its successors and assigns, are authorized, for a period of twenty-five years, "to sell and supply gas in the city of South Omaha, Douglas county, Nebraska, and to use, lay, and maintain pipes and mains, with all necessary and proper attachments, connections, and appurtenances below the surface of the highways, sidewalks, streets, alleys, lanes, avenues, boulevards, and public places, and on bridges and viaducts in said city," etc. By the second section the quality of gas to be furnished is specified, and it is provided that it shall be sold at a certain maximum rate. By section 3 it is provided that the company shall furnish gas to the city for its public buildings at the rate of $1 per 1,000 cubic feet. Other provisions regulate in detail the manner of laying pipes, and provide for the payment to the city of five cents for each thousand cubic feet of gas sold and paid for. A forfeiture is provided in case of the company's failure to perform any of the conditions of the ordinance. Provision is made for the city's requiring the company to extend its mains, and in this connection is the following: "The South Omaha Gas Light Company, its successors and assigns, shall be required to extend its mains upon like requests whenever the city shall enter

into contract with it for lighting and furnishing with gas not less than four street lamps for every 1,000 feet of such extension," etc. It will be observed that the ordinance does not expressly authorize the construction of gas works within the city. It only authorizes the use of the streets and other public highways for the laying and maintenance of mains. Nor is there involved in the ordinance any contract for the lighting of the streets. The clause last quoted merely anticipates the probability of such a contract in the future, and in view of that probability reserves a power to require a further use of the franchise than the grantee might see fit to make of its own accord. It is alleged in the petition, denied in the answer, and without evidence by the court found to be true, that the assignee, having already gas works in Omaha, intends to supply the city of South Omaha from such works. We shall assume as the district court did, that the ordinance did not contemplate the erection of works for the manufacture of gas in South Omaha.

It is admitted by the plaintiffs that the general power of control over the streets, conferred by section 35, would be sufficient, if that section stood alone, to authorize such an ordinance as the one under consideration. It is practically admitted that subdivision 16 of section 68, standing alone, would not restrict the power conferred by section 35, even if it did not itself grant the power. It is, however, contended that subdivision 15 is a specific grant on the subject, which prevails against and limits the more general provisions, and restricts the power of the city in the premises to the granting of the right to lay pipes in the streets to such persons, companies, or associations as have already or contemporaneously been authorized to erect gas works in the city, and that then the franchise cannot endure for more than five years. In support of this argument attention is called to the subsequent provisions of subdivision 15, for the acquisition, by construction, purchase, or condemnation, of gas works. The argument is that the language of the grant of power

is confined to persons or corporations which shall have gas works in the city, and that a reason is found for the restriction in a manifest policy of the act to provide for ultimate municipal ownership. It is said that effective exercise of those provisions demands that private plants should be wholly within the city. The force of this argument is entirely destroyed by reference to the fact that previous to 1895, subdivision 15 began as at present, but ended with the words "not exceeding five years." The provisions for municipal construction, purchase, and condemnation were added by amendment in that year. (Session Laws 1895, ch. 13.) The peculiar language of the first part of the statute could not, therefore, have been adopted with any reference to the policy of municipal ownership. We must ascertain the force of the provisions by looking to their original form. The new words do not affect this case. There was then a general supervision and control of the streets vested in the council. This was followed by a grant of power to authorize "any person * * * to erect gas works * * * in said city, and give such persons, * * * the privilege of furnishing lights for the streets * * * for any length of time not exceeding five years." Then there came a grant of power, referring again to the lighting of streets, but also to keeping them free from electric wires, and also to provide for the laying down of gas pipes, and regulate the sale and use of gas and the charge therefor. Subdivision 15 relates solely to the lighting of highways. Subdivision 16 relates, among other things, to the furnishing of gas to private consumers and the use of the streets for that purpose. They are separate provisions relating to different subjects, not intended the one to nullify the other, but intended to exist concurrently and each to control with reference to its own subject-matter. We need not consider whether contracts may be made for lighting the streets with persons who have not gas works within the city. Entirely distinct from the provisions on that subject there is an ample grant of power,

49

unqualified as to persons, method, or time, to regulate the laying down of mains, the sale and use of gas, and the rate to be charged therefor. The ordinance in question extends only to that subject and is within the power.

REVERSED AND DISMISSED.